Filed 8/3/23  In re I.H. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re I.H. III, a Person Coming Under the Juvenile Court Law. | |
| TULARE COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>I.H. et al.,<br><br>Defendants and Appellants. | F086054<br><br>(Super. Ct. No. JJV065802B)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from orders of the Superior Court of Tulare County.  Glade F. Roper, Judge.  (Retired Judge of the Tulare Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)

Karen J. Dodd, under appointment by the Court of Appeal, for Defendant and Appellant I.H., Jr.

Janette Freeman Cochran, under appointment by the Court of Appeal, for Defendant and Appellant S.J.

Jennifer M. Flores, County Counsel, and Carol Helding, Deputy County Counsel, for Plaintiff and Respondent.

---

[*]     Before Meehan, Acting P. J., Snauffer, J. and DeSantos, J.

Appellants S.J. (mother) and I.H., Jr. (father) are the parents of the one-year-old child, I.H. III (the child), who is the subject of this dependency case. Mother challenges the juvenile court's orders issued at a contested Welfare and Institutions Code section 366.26[1] hearing that resulted in mother's parental rights being terminated. Mother contends the juvenile court erred by failing to apply the beneficial parent-child relationship exception. Father joins in mother's arguments. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### *Initial Removal*

In October 2021, the Tulare County Health and Human Services Agency (agency) received a referral after mother and the child tested positive for methamphetamines at the time of the child's birth. Mother's two oldest children lived with their father, and another child was removed through dependency proceedings and adopted by a relative. Mother admitted to using methamphetamine a few days earlier, and she understood that she should not have been using while pregnant. The child was taken into protective custody and placed in a resource family home.

Father expressed interest in taking custody of the child when a social worker made contact with him at his residence. Father did not live with mother, and he denied knowing she was using drugs while pregnant. The social worker's discussion with father was cut short because father had to take his mother to the doctor. However, he did not follow up or respond to the agency's attempts to verify his sobriety with drug testing.

The agency filed a petition alleging the child was described by section 300, subdivisions (b)(1) and (j). The petition alleged the child was at substantial risk of suffering serious physical harm as a result of mother's substance abuse and father's failure to protect the child. The petition further alleged that the child's half sibling was

---

**1**     All further statutory references are to the Welfare and Institutions Code.

neglected due to mother's substance abuse in 2011. At the detention hearing held on October 26, 2021, mother and father were both present and appointed counsel. The child was detained from mother's custody, and supervised visitation between the child and mother was ordered to occur twice per week for one hour.

***Jurisdiction and Disposition Hearing***

The agency's jurisdiction and disposition report, filed on December 1, 2021, recommended that the petition be found true and family reunification services be provided to mother. Father was not recommended family reunification services because of his status as an alleged father. The child was placed in the home of a maternal aunt and uncle, who had adopted the child's half sibling through prior dependency proceedings. The report included details of mother's previous dependency case from 2011 where the child's half sibling was removed due to mother's substance abuse and unsafe home conditions.

Mother and father were participating in supervised visits with the child, but they left their two-hour visits early for an unknown reason on occasion. Both parents were described as attentive and affectionate during the visits. Mother left a residential substance abuse treatment program, and she failed to enroll in another program. Both parents missed multiple drug tests and tested positive for amphetamines on October 25, 2021. The agency subsequently amended the original petition to include an allegation pursuant to section 300, subdivision (b)(1), which alleged that father had a substance abuse problem that affected his ability to provide regular care for the child.

At the jurisdiction and disposition hearing held on December 30, 2021, both parents were present, and mother submitted on the agency's recommendation. Father's counsel argued in opposition to the allegation that father failed to protect the child. The juvenile court found the allegations in the amended petition true, except for the contested allegation that father failed to protect the child. Father was elevated to a presumed father based upon the execution of a voluntary declaration of parentage. Mother and father

3.

were ordered a provision of family reunification services, and a six-month review hearing was set for June 23, 2022.

*Family Reunification Period*

The agency's report for the six-month review hearing, filed on June 13, 2022, recommended family reunification services be terminated as to mother and father. Mother was compliant with her mental health services, and she completed her parenting program. However, she failed to participate in any substance abuse treatment programs or submit to random drug testing. She was also arrested for possession of a controlled substance and drug paraphernalia during the reporting period. Mother attended her supervised visits with the child consistently, and they both appeared to enjoy their time together. Father failed to attend substance abuse treatment, and he tested positive for amphetamines during spot drug testing. At the six-month review hearing held on August 18, 2022, the juvenile court terminated mother and father's family reunification services, and it set a section 366.26 hearing for December 15, 2022.

*Section 366.26 Hearing*

The agency's section 366.26 report, filed on December 15, 2022, recommended that the juvenile court terminate the parental rights of mother and father and order a permanent plan of adoption for the child. The child remained placed in the home of the maternal aunt, uncle, and half sibling since a week after his birth. The child, now one year old, was meeting age-appropriate milestones with no medical concerns. The relative care providers were fully committed to the child, and they desired to provide the child permanency through adoption. The child was observed to have a secure and healthy relationship with the relative care providers by the social worker.

The agency detailed mother and father's consistent attendance of supervised visits. Since mother's reunification services were terminated, she had minimal interaction with the child. Mother was observed to immediately feed the child and rock him to sleep without further interaction. When the child was awake, mother was redirected by the

4.

care provider for feeding the child candy and speaking with father on a video chat during the visit. Father appeared tired during visits and held the child minimally.

On January 6, 2023, father filed a section 388 petition requesting either additional reunification services or placement of the child with the paternal grandmother. The petition alleged father was involved in drug treatment since July 2022 and was providing negative drug test results. The juvenile court set father's section 388 petition to coincide with the section 366.26 hearing. The agency filed an addendum report in opposition to father's request.

A contested section 366.26 hearing was held on March 23, 2023, in combination with a hearing on father's section 388 petition. Mother and father were both present for the hearing. The juvenile court addressed the section 388 portion of the hearing to begin, and it denied father's section 388 petition. Mother testified regarding her visits with the child, and she described how the child gives her hugs and kisses. She acknowledged that the child never lived with her or had any type of negative reaction at the end of mother's visits. Mother disagreed with the agency's recommendation and hoped to have additional time in recovery while the child was placed in a plan of guardianship. She also testified that she recently received a phone call to enter a new program.

Counsel for the agency and child argued that no exceptions to adoption were applicable. Counsel for mother argued that the beneficial parent-child relationship exception applied, and father's counsel joined in that argument. After hearing argument from all counsel, the juvenile court proceeded to its ruling on the section 366.26 hearing as follows:

> "I find that there is no exception that would justify departing from the recommendation from the agency. There is no evidence of detriment to the child to terminate the parental rights. I'll find by clear and convincing evidence that it is in the child's best interest to be adopted. [¶] I am glad that mother is in treatment and I hope that you will follow through with that. Obviously that's going to impact the rest of your life. And you should fully adopt recovery. [¶] But at this point in time I think the time

5.

has passed for me to continue further reunification efforts. So, the parental rights are terminated and the—I'll adopted the recommendation for the permanent plan of adoption.…"

The juvenile court proceeded to terminate the parental rights of mother and father and selected a plan of adoption for the child. Both parents filed timely notices of appeal.

## DISCUSSION

### I.      Beneficial Parent-Child Relationship Exception

Mother contends the juvenile court erred when it did not apply the beneficial parent-child relationship exception to adoption. Mother asserts that the juvenile court terminated parental rights without applying our Supreme Court's analysis from *In re Caden C.* (2021) 11 Cal.5th 614 (*Caden C.*). Mother also suggests that the juvenile court failed to apply the exception because mother failed to make progress in substance abuse treatment. Father joins in mother's arguments.

#### A.      *Legal Principles*

At a section 366.26 hearing, when the juvenile court finds by clear and convincing evidence the child is adoptable, it is generally required to terminate parental rights and order the child be placed for adoption unless a statutory exception applies. (§ 366.26, subd. (c)(1).) One of the statutory exceptions is the beneficial parent-child relationship exception, which applies when "[t]he court finds a compelling reason for determining that termination would be detrimental to the child" where "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (*Id.*, subd. (c)(1)(B)(i).)

A parent claiming an exception to adoption has the burden of proof to establish by a preponderance of evidence that the exception applies. (*In re Melvin A.* (2000) 82 Cal.App.4th 1243, 1252.) Thus, the parent must prove three elements in order to prevail under the beneficial parent-child relationship exception: "(1) regular *visitation and contact*, and (2) a *relationship*, the continuation of which would *benefit* the child such

6.

that (3) the termination of parental rights would be *detrimental* to the child." (*Caden C.*, *supra*, 11 Cal.5th at p. 631.)

The first element of the beneficial parent-child relationship determination asks the "straightforward" question of whether the parent visited consistently, considering the extent permitted by court orders. (*Caden C.*, *supra*, 11 Cal.5th at p. 632.) The focus is on the best interest of the child as opposed to punishing or rewarding parents for good behavior in maintaining contact. (*Ibid.*)

The second element of the exception asks whether the child would benefit from continuing the relationship. (*Caden C.*, *supra*, 11 Cal.5th at p. 632.) The parent-child relationship "may be shaped by a slew of factors, such as '[t]he age of the child, the portion of the child's life spent in the parent's custody, the "positive" or "negative" effect of interaction between parent and child, and the child's particular needs.' " (*Ibid.*, quoting *In re Autumn H.* (1994) 27 Cal.App.4th 567, 576.) The juvenile court's focus should again be on the child, and it "must remain mindful that rarely do '[p]arent-child relationships' conform to an entirely consistent pattern." (*Caden C.*, at p. 632.)

When considering the third element, courts must determine "how the child would be affected by losing the parental relationship—in effect, what life would be like for the child in an adoptive home without the parent in the child's life." (*Caden C.*, *supra*, 11 Cal.5th at p. 633.) Potential negative effects from severance of the relationship might include "emotional instability and preoccupation leading to acting out, difficulties in school, insomnia, anxiety, or depression." (*Ibid.*) An adoptive home might provide a new source of stability that alleviates emotional instability and preoccupation leading to those problems, making the loss "not, at least on balance, detrimental." (*Ibid.*) Under this element, the court is again guided by the child's best interest, but in a "specific way: it decides whether the harm of severing the relationship outweighs 'the security and the sense of belonging a new family would confer.' " (*Ibid.*)

In *Caden C.*, the appellate court held "that because the parent continued to struggle with substance abuse and mental health issues and because of the risks of foster care and benefits of the potential adoptive home, no reasonable court could find the child's relationship with his parent outweighed the benefits of adoption." (*Caden C.*, *supra*, 11 Cal.5th at pp. 625–626.) Rejecting that conclusion, our Supreme Court found "[t]he Court of Appeal did not explain how the parent's struggles related to the specific elements of the statutory exception:  the importance of the child's relationship with the parent or the detriment of losing that relationship." (*Id*. at p. 626.) A parent's struggles with issues that led to dependency were determined to be relevant only to the extent they inform whether the child would "benefit from continuing the relationship and be harmed, on balance, by losing it." (*Id*. at p. 638.)

### B.    *Standard of Review*

Appellate courts review a juvenile court's ruling on the application of the beneficial parent-child relationship exception using a "hybrid" standard. (*Caden C.*, *supra*, 11 Cal.5th at p. 641.) The substantial evidence standard applies to the first two elements of regular visitation and existence of a beneficial relationship. (*Id*. at pp. 639–640.) The juvenile court's decision as to the third element—whether termination of parental rights would be detrimental to the child—is reviewed for an abuse of discretion. (*Id*. at p. 640.) "Review for abuse of discretion is subtly different, focused not primarily on the evidence but the application of a legal standard.  A court abuses its discretion only when ' " 'the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination.' " ' " (*Id*. at p. 641.)

The standard of review of a court's determination that a parent did not meet his or her burden to prove an exception to termination of parental rights is "whether the evidence compels a finding in favor of the appellant as a matter of law." (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1528, disapproved on other grounds by *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7.) Specifically, the question is "whether the

appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' " (*I.W.*, at p. 1528.)

### C.    *Analysis*

In the present case, the juvenile court determined that mother and father failed to meet their burden in regards to the beneficial parent-child relationship exception.  While section 366.26, subdivision (c)(1)(D) requires the juvenile court to " 'state its reasons in writing or on the record' " in concluding that termination of parental rights would be detrimental to the child, the juvenile court is not required to recite specific findings when it concludes that terminating parental rights would not be detrimental to the child.  (*In re A.L.* (2022) 73 Cal.App.5th 1131, 1156.)  Although a trial court's statement of its findings or an explanation of the reasons for its decision may be helpful in conducting appellate review, it is not a legal requirement.  (*Ibid*.)  Thus, the juvenile court did not err in failing to further analyze the benefits of the parent-child relationship and adoption.

Furthermore, there is nothing in the juvenile court's ruling to show it based its decision on grounds identified in *Caden C.* to be improper.  The court began its ruling by finding that there were no exceptions to adoption or evidence of detriment to the child if parental rights were terminated.  After the juvenile court made the findings necessary to terminate parental rights, it appeared to express a note of encouragement for mother in order to soften the blow of its forthcoming orders.  The court urged mother to "fully adopt recovery" before clarifying that it could not resume reunification efforts.  These comments came on the heels of mother's testimony that she would participate in services if the juvenile court ordered a plan of guardianship.

Mother and father's suggestion that the juvenile court only terminated parental rights because the reunification period had expired ignores the broader context of its statements.  The totality of the court's statements at the hearing makes clear that it decided to terminate parental rights because both parents failed to meet their burden of

9.

proving the existence of a beneficial parent-child relationship. We do not believe that the court injected an improper factor into its determination on the exception or gave mother's lack of progress in substance abuse treatment any weight in deciding a permanent plan for the child. Therefore, we find no such error on this record.

In sum, the evidence in the record weighed in favor of the preferred permanency option of adoption. Given the fact that the child spent all but one week of his young life in foster care, exhibited no signs of distress when separated from mother at the conclusion of visits, and was bonded to his care providers and half sibling, we find the juvenile court did not abuse its discretion. Under these circumstances, the court's ruling is entitled to a presumption of correctness, and remand is unwarranted. (*Caden C.*, *supra*, 11 Cal.5th at p. 640.) Therefore, the juvenile court did not err in declining to apply the beneficial parent-child relationship exception, and its orders terminating mother and father's parental rights were proper.

## DISPOSITION

The juvenile court's orders are affirmed.